MISSISSIPPI HOME INSURANCE COMPANY *v.* WILLIAM H. DOBBINS.

INSURANCE AGAINST FIRE. *Other insurance. Breach of condition. Failure to return premium. Estoppel.*

A fire insurance company is estopped by a failure to return the premium to claim a forfeiture for breach of condition in respect to other insurance without the company's consent when it appears that under the provisions of the policy the insurance might be terminated at any time at the request of the insured, in which case the company should return the customary short rates and that the policy might be terminated at any time, at the option of the company, on tendering a ratable proportion of the premium; that the defendant's agent who resided in the same town with the assured, was notified of the loss on the day following; that two days after the loss the premium for three years' insurance was paid; that six hours after such payment, on the same day, during which there had been no change in the condition of the parties, the agent was informed that other insurance had been taken out without the company's consent, in violation of a condition of the policy; that he thereupon told the insured that his policy had been forfeited by such additional insurance, but that he would report the matter to the company; that thereafter the insured obtained from the agent blanks on which to make proofs of loss; that the agent testified that he had full power to cancel the policy without sending it to the company; and that no part of the unearned premium had been returned or offered to be returned.

FROM the circuit court of Perry county.

HON. JOHN R. ENOCHS, Judge.

The appellant was defendant and the appellee plaintiff in the court below. The opinion states the facts of the case.

*Dabney & McCabe* and *N. C. Hill,* for appellant.

The case of *Insurance Company* v. *Smith,* 79 Miss., 142, relied on by the appellee, is no authority for and does not support the decision of the lower court in this case. The reason

fails entirely where the premium is paid before notice of the additional and unauthorized insurance. The fact of retention of the premium cannot operate as an estoppel. The reason for the estoppel is that the defendant accepted the premium knowing it would avoid the policy, and afterwards retained it, although disputing its liability. In this case it did not receive the premium, as held by the presiding judge, with such notice. It is true that it learned of the ground of forfeiture soon after receiving it, but the element of estoppel is not present any more than it would be in any case where the premium was paid before the loss and was retained after knowledge of the fact, which would avoid the policy, and which the company expected to insist upon. In case of *Northern Assurance Co.* v. *Grand View Building Co.*, 183 U. S., 308, is an interesting opinion covering the question involved in this appeal.

*Ellis & Sullivan*, for appellee.

It was the duty of the company, when the discovery was made that there was another policy on the same property, to return or offer to return the premium, or at least the unearned part of it. Yet the agent saw the plaintiff a few days after the collection of the premium and after the knowledge of the other policy, and instead of offering to return the premium, if the company desired to avoid the payment of the loss, he kindly informed plaintiff that his policy was void and that he would get nothing for the loss. However, the agent graciously promised to report the matter to the company, which, perhaps, he did, but the company still keeps the plaintiff's premium paid it—keeps the consideration paid it for three years' insurance on the building—the consideration to the company for the payment of the loss by fire at any time it might occur during the three years covered by the policy, and at the same time smoothly refuses to pay the loss. In other words, the defendant's position is that the contract is binding on the plaintiff but is not binding on the defendant. But it may be said that the

company had the right to declare the policy void and not be bound by it. This may be true, but when the company made its election and decided to treat the policy as void it had to treat it as void *in toto*, and surrender all its rights under the contract. This, we think, is what is meant in *Insurance Co.* v. *Smith*, 79 Miss., 142; *Assurance Co.* v. *Phelps*, 77 Miss., 628, and *Mitchell* v. *Insurance Co.*, 72 Miss., 53. But the defendant is not willing to treat the contract as void *in toto*. It wants to enforce that part of the contract that benefits it and reject that part of the contract that imposes liability.

WHITFIELD, C. J., delivered the opinion of the court.

The facts in this case are as follows: The fire occurred on the 23d of October. Dobbins notified the agent, Montague, on the 24th. The agent was paid the premium some time in the forenoon of October 25th, without knowledge at that time of the additional .insurance: but six hours thereafter, on the same day, when there had been no change whatever in the condition of the parties, he was fully informed of the additional insurance. The insurance agent and Dobbins lived in the same town, within a few minutes' easy communication. After full knowledge on the 25th of the other insurance, the agent had another conversation with Dobbins, in which he told him that the policy had been forfeited on account of the additional insurance, but that he would report the matter to the company; and more than that, when Dobbins came to him to get blank proofs to make proofs of loss, he furnished them. He furnished them, of course, for proofs to be made. There would have been no sense in the act otherwise. Furthermore, he testifies himself that he had power to cancel the policy, and was under no necessity to send it to the company for cancellation. The policy had been in force about one month. The insured had paid the full premium for three years. The policy provided: "Sec. 8. This insurance may be terminated at any time at the request of the insured, in which case this company shall

return the customary short rates for the time the policy has been in force. It may also be terminated at any time, at the option of the company, giving written or verbal notice to that effect, and refunding or tendering a ratable proportion of the premium for the unexpired term of this policy." No part of the unearned portion of the premium was returned, or offered to be returned.

We have been thus full in the statement of the facts to show the inapplicability of the argument made by the learned counsel for appellant, which proceeds upon the assumption that the case presents nothing more than a mere retention of the premium by the company, which did not, at the very instant the premium was paid, have knowledge of the other insurance. The facts show very much more than that. It seems to us extremely difficult to discover any difference in principle between a case where the agent knew at the time of the other insurance and one in which he knew just six hours later, in the same day, in the same town, within a few minutes' reach of the insured, and with no change whatever in the six hours' interim in the condition of the parties. A case precisely in point is that of *Kingston Fire and Lightning Co.* v. *Olmstead*, 68 Ill. App., 113. The court say: "The fire occurred on the 13th of July, 1893. In appellant company, losses are paid by assessments on policy holders. On the 24th of July an assessment was levied to meet this loss. On the 4th of August appellee paid the amount of her assessment, $10. About the same time appellant's president was notified of the existence of the mortgage, and on the 24th of August a bill was filed to foreclose it, to which appellant was made a party defendant. The evidence was not clear that the president was notified of the mortgage before appellee's $10 were received, but it is clear that he was served with summons in the foreclosure suit within a few days thereafter. It had full notice of the existence of the mortgage within a month after an assessment to pay the loss had been ordered, and yet it did not elect to declare the policy void be-

cause of the misrepresentation until the 2d of January, 1894; retaining in the meantime the money which by assessment had been raised to pay the loss, including the $10 paid by appellee.'' The agent here knew, not ''a few days after,'' but six hours later, on the same day. But this is not all. This agent had full power to cancel the policy without sending it to the company, and yet he not only did not cancel it, but he actually furnished the insured blanks upon which to make his proof of loss, leading him to suppose no forfeiture would be claimed. More than that, the policy contained the clause 8 we have specified. Mr. Joyce (vol. 3 of his work on Insurance, sec. 2486) says: ''If the policy provides that it shall be void in case of other insurance upon the property, unless notice has been given and the company's consent indorsed on the policy, the company cannot, in case of its refusal to indorse consent, be compelled to return the premium for the remainder of the term which the policy would have had to run, unless the policy provides that the insurer may cancel upon returning the premium for the unexpired term. In such case the insurer must either cancel the policy and return the premium, or else the policy will continue in full force and effect.'' Now, the last clause of this section would make the company liable on this clause 8, independent of any other consideration. In 9 Am. St. Rep., 237, in a note to *Wheaton* v. *N. B.*, etc., *Ins. Co.;* s. c., 18 Pac., 758, Mr. Freeman says: '' If the insurer has notice of a forfeiture, the effect of which is to relieve him from liability for a loss which has occurred, and intends to rely upon such forfeiture, it is his duty to not encourage a delusive hope on the part of the assured that payment will be made on the making of due proofs of loss, or complying with some other condition suggested by the insurer. He should promptly say to the assured, 'Our contract of insurance had ceased to exist before you suffered any loss, and it is idle for you to proceed upon any other assumption. If, on the other hand, the insurer occasions or encourages the insured to incur the expense and trouble of making

proper proofs of loss, he will, notwithstanding what is said in the principal case, generally be held to be estopped from afterwards proving a known, pre-existing cause of forfeiture. *Niagara Fire Ins. Co.* v. *Miller,* 120 Pa., 504 (14 Atl., 385; 6 Am. St. Rep., 726); 18 Ins. Law J., 359; *Carpenter* v. *Continental Ins. Co.,* 61 Mich., 635 (28 N. W., 749); *Oshkosh Gaslight Co.* v. *Germania. Fire Ins. Co.,* 71 Wis., 454 (37 N. W., 351; 5 Am. St. Rep., 233)." In Wood on Fire Ins., p. 838, the author says: " In all cases when the insurer, at the time when the policy is issued, knew of other insurance, and there is no agreement for its cancellation or nonrenewal, or when notice is given that other insurance has been obtained, it is bound either to indorse consent upon the policy or cancel it, or, failing to do either, it will be treated as having assented thereto." See, also, *Phœnix Ins. Co.* v. *Tomlinson,* 125 Ind., 84 (25 N. E., 126), and *Schreiber* v. *German-American Hail Ins. Co.,* 43 Minn., 368 (45 N. W., 708), where the court say: " The condition we have stated did not make the policies absolutely void. They were void at the election of the defendant, which might waive the breach of the condition. If it chose to waive it, the insured could not avoid the premium notes by reason of the breach. In a case similar to this, the court, in *Huntley* v. *Perry,* 38 Barb., 569 (an action upon a premium note), said that the insured shall not be permitted to set up his own misrepresentation as a defense when the company is asserting the validity of the policy and seeking to enforce the consideration he agreed to pay for it. But if the defendant, under the condition, elected to avoid the policy, it must avoid it *in toto* and from the beginning. It could not affirm it for part of the time, or for one purpose, and avoid it for the remainder of the time, or for another purpose. If avoided, the consideration for the premium notes would fail. Where there is a stipulation in the policy that, in case it is void as an insurance for violation of such condition, the insurer may retain the paid-up premium, it may be the insurer can so retain

it notwithstanding he elects to avoid the policy. But he cannot avoid it and enforce the promise by the insured in consideration of the insurance. A stipulation that, in case the policy shall become void as an insurance from the time of the happening of a particular event, the whole premium paid or unpaid for the entire term shall be deemed earned, gives the insurer the right to collect the unpaid premium for the benefit of insurance which the insured has to the time of the specified event is a sufficient consideration for the promise to pay the premium. There is no consideration for such promise where the insured gets no benefit of insurance. To make any act of the insurer a waiver of a breech of a condition for which he may elect to treat the policy as void, it must be with notice of the breach. As it does not appear that this defendant had notice of the breach alleged when it enforced payment of the premium notes, that did not constitute a waiver. But the action to enforce the notes could proceed only on the theory that the policy was valid. It was a solemn assertion of its validity. And having by that means compelled the insured to perform the contract on his part, it certainly seems unjust that it should retain what it thus compelled the insured to pay, and be permitted to escape the obligation of the contract on its part. After it learned that it might elect to avoid the policy, honesty required that, before so electing, it should restore the money, payment of which was thus exacted. The retention of that money was, in morals, certainly, inconsistent with an intention to avoid the policy.''

In *Johnson* v. *Southern Mutual Life Ins. Co.*, 79 Ky., 406, the court say: '' The appellee, upon entering up the forfeiture it claims, and giving notice thereof to Johnson, did not offer to surrender his note, but retained it long after demand had been made by him for a new and paid up policy, and alleges in its answer that ' said note is owned and held by defendant.' ''

It is to be observed that this policy contained no provision that no part of the insurance premium should be returned. It

must be obvious that this case does not present the single question whether the mere unqualified retention of the premium by the company, not knowing at the very time of its reception of the other insurance, estops the company from setting up the forfeiture on that ground. This is a far different and a far stronger case, as the facts pointed out show.

Accepting, therefore, the correctness of the finding of fact by the learned circuit judge, to-wit: That the agent did not know at the very instant he received the premium, that there was other insurance, it follows from the very acts and conduct of the agent, acting in those respects for the company, that the appellant is estopped to set up the forfeiture.

*Affirmed.*