140 So. 544

**NATIONAL SURETY CO. v. FIRST NAT. BANK OF WETUMPKA.**

5 Div. 90.

Supreme Court of Alabama.

Jan. 14, 1932.

Rehearing Denied March 31, 1932.

424

Ball & Ball, of Montgomery, for appellant.

Holley, Milner & Holley, of Wetumpka, and Steiner, Crum & Weil, of Montgomery, for appellee.

of this character, which are in the nature of insurance, wherein doubtful language is to be construed most favorably to the insured. Louis Pizitz Dry-Goods Co. v. Fidelity & Deposit Co. (Ala. Sup.) 136 So. 800; [1] 111. Surety Co. v. Donaldson, 202 Ala. 183, 79 So. 667; Ala. Fid. & Cas. Co. v. Ala. Penny Savs. Bank, 200 Ala. 337, 76 So. 103; Am. Surety Co. v. Pauly, Receiver, 170 U. S. 133, 18 S. Ct. 552, 42 L. Ed. 977; 35 C. J. 1091.

■ ■ But recurring to the argument (first in order of presentation in brief) that the $1,500 check was paid, we consider the authorities relied upon by defendant here inapplicable. One line of authorities is illustrated by the case of City Nat. Bank v. Burns, 68 Ala. 267, 44 Am. Rep. 138. The case is readily to be distinguished, and the holding of that authority is concisely stated in the second headnote as follows: "Where it is shown to be out of a bank's course of business to receive for collection checks drawn on it by its depositors, and a check on it, drawn by one of its depositors in favor of another, is presented by the 'latter, and the amount thereof is credited on his pass-book as a deposit, and the check is placed on the file of paid and canceled checks, and afterwards the amount of the check is also entered to his credit, and charged against the drawer, on the books of the bank; these facts constitute a payment of the check, and the amount of it can not be withheld by the bank on discovering that the check was an unauthorized overdraft, and the drawer was insolvent." It thus appears the stated circumstances disclosed, as stated in the opinion, "a complete, executed transaction."

Not so in the instant case. The check. drawn by the Wetumpka bank was forwarded to the Tallassee bank for collection, and not for deposit, and that particular transaction was never closed, for the reason the check was never paid. In lieu of payment, the Tallassee bank forwarded its check on the Federal Reserve Bank of Atlanta, which was dishonored. Nor is it material that the First National Bank of Birmingham, upon receipt of the $1,500 check from the Wetumpka bank, gave the latter bank credit therefor. It had the right to charge back this credit upon the nonpayment of the check, as was the custom, and in keeping with the well-recognized rule of law that, in the absence of an agreement to the contrary, a check is merely a conditional payment, presumptively received, not as payment, but as a convenient means of getting the money. Agnes Glenn v. City of Birmingham (Ala. Sup.) 137 So. 292.[2] Certainly the Tallassee bank could not by a mere process of its own as to bookkeeping pay such check when in truth and fact it was never paid, but the only effort in that direc-

## GARDNER, J.

The suit is on what is known as a bank depository bond. The defendant denies liability upon the theory that, as to the fund on deposit other than the $1,500 check, there was no "proper legal order" therefor, as stipulated in the bond, which, it insists, should be strictly construed, and as to the $1,500 check that it was paid when the same was charged to plaintiff's account by the Tallassee bank, and credited to its account with the First National Bank of Birmingham.

■ We are persuaded these insistences are untenable. In the first place, it may be noted the strict rule of construction contended for by defendant is not applicable to contracts

[1] 223 Ala. 385.
[2] 223 Ala. 501.

tion was the issuance of a worthless check on the Federal Reserve Bank of Atlanta. As said by the Supreme Court of Texas in Waggoner Bank & Trust Co. v. Gamer, 213 S. W. 927, 929, 6 A. L. R. 613, speaking to a like question: "The bank appropriated the check, instead of paying it. * * * Marking the check as paid was not payment of the check. It was, in truth, not paid."

The case of Planters' Merc. Co. v. Armour Packing Co., 109 Miss. 470, 69 So. 293, is rested upon the theory of negligence on the part of the forwarding bank in sending the check to the payee bank for collection. But this is not the rule in this state. Section 9222, Code 1923; Dudley v. Phenix-Girard Bank, 216 Ala. 591, 114 So. 188; Stanley v. Green, 205 Ala. 225, 87 So. 356. The check was consequently properly presented through the mails, and the evidence therefore tending to show that, if presented at the window of the bank on the day of its receipt, it would have been paid, is without effect upon the question here involved.

As to the remainder of the deposit, it is without dispute that no check was drawn, and the letter of the contract in this regard was therefore not followed. But this contract was entered into for practical purposes, the protection of plaintiff's deposit against any incapacity of the Tallassee bank to pay. True, a bank is not liable for a refusal to pay, unless there has been made by the depositor an appropriate demand, unless waived by the bank or a demand would necessarily be futile. Ex parte First Nat. Bank, 206 Ala. 394, 90 So. 340. As observed by this court in Weathers v. Hill, 92 Ala. 492, 9 So. 412, 413, "the observance of a vain and fruitless ceremony is not, by the law, made a prerequisite to the assertion of a right." This is the generally accepted rule. 9 C. J. 81; 13 C. J. 650; 18 C. J. 588. This principle was applied by the Mississippi court in Fidelity & Deposit Co. v. Wilkinson County, 106 Miss. 654, 64 So. 457, 459, Ann. Cas. 1916B, page 1248, wherein the court said: "Such an allegation [that is, that there had been a demand for payment] was unnecessary, for the bill specifically alleges, as hereinbefore set out, that the bank 'suspended payment, closed its doors, and was put in the hands of a receiver,' from which it appears that the presentation of a warrant would have been a vain and useless thing, the doing of which the law does not require." See, also, National Surety Co. v. Leflore County (C. C. A.) 262 F. 325, 18 A. L. R. 269. And in Holden v. Farmers' & Traders' Nat. Bank, 77 N. H. 535, 93 A. 1040, 1042, L. R. A. 1915E, 309, Ann. Cas. 1917E, 23, the following: "But where the bank has disclaimed liability, or where for any other reason the demand would manifestly be futile, none need be made." To like effect the language of the court in Fletcher Am. Nat. Bank

v. Crescent Paper Co., 193 Ind. 329, 139 N. E. 664, 666: "A party is not required to do a useless act. After a controversy had arisen, and the bank had definitely disclaimed all liability for the amount of the canceled checks, any further demand could have served no useful purpose."

There are authorities also to the effect that incapacity to make delivery is equivalent to the refusal of a demand (18 Corpus Juris, 588), and that demand for performance is unnecessary where it is apparent it would be unavailing, as where the party from whom performance is due has placed it out of his power to perform. 13 Corpus Juris, 661.

Applying these principles to the undisputed facts as here presented, we think it clearly appears the presentation of a check on the Tallassee bank for the amount of plaintiff's deposit would have been entirely a useless ceremony and futile. The bank was hopelessly insolvent, a condition known to the officers, and unable to raise funds sufficient to care for the remittance check forwarded to the Federal Reserve Bank, and with $15,000 of checks on hand unpaid for lack of funds. Suspension of business was impending, and, indeed, the bank was closed on the afternoon of Saturday, February 15, 1930, an hour earlier than customary. At a meeting of the board of directors the following day (which was within the period of the year covered by the bond), the permanent closing of the bank and its liquidation was decided, and the bank remained closed, and is in process of liquidation. Had a check for the deposit of the Wetumpka bank been presented on Saturday, the 15th, it could not have been paid in fact. Indeed, any payment, under the circumstances, would appear to run counter to the law. 12 USCA § 91; Abilene Flour Mills Co. v. Jackson Lbr. Co., 223 Ala. 416, 136 So. 808. The bank had incapacitated itself to pay, and any demand therefor would have been futile.

We conclude, therefore, that plaintiff has shown a breach of the bond, and was entitled to recover under the undisputed facts.

Plaintiff insists also that as the last day, February 16, 1930, covered by the bond, fell on Sunday, that it had until closing hours of the succeeding day within which to present a check for its deposit (citing Hammond v. American Mutual Ins. Co., 10 Gray [Mass.] 306; Ringgold Sunday Law, 172; 4 Page on Contracts p. 3640; Northey v. Bankers' Life Ass'n, 110 Cal. 547, 42 P. 1079; Ingram v. Wackernagel, 83 Iowa, 82, 48 N. W. 998, among other authorities); but, as the foregoing consideration suffices to dispose of the case, this phase of the argument needs no discussion, and may be left to one side.

As to the amount of recovery, that was a matter of calculation under the terms of the

bond, and, as it appears defendant's counsel agreed at the trial to the correctness of the amount, assuming the court was right in its conclusion of the law, we consider any argument now to the contrary to be without merit.

The few remaining assignments of error relate to rulings on evidence which have been duly considered by the court in consultation, and which we conclude require no separate treatment here. They are without merit, and, in any event, such rulings could have no effect upon the result reached.

Finding no reversible error, the judgment will be affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.

On Rehearing.

GARDNER, J.

 As to the amount of recovery, appellant insists proper consideration has not been given the statement of the witness Anderson, receiver of the Tallassee bank, to the effect that he believed "the bank would pay a dividend in the amount of forty per cent." It is not pretended that any dividend had been paid plaintiff, or any one else, nor can it be controverted the foregoing was a mere estimate of the receiver as to what might be expected, and nothing more. Nor do we think it could successfully be contended that the facts, as stated in the original opinion, establish a prima facie case for recovery for the full penalty of the bond, limited, of course, by the provisions of paragraph 2 thereof. Fidelity & Deposit Co. v. Bassett, 133 Wash. 77, 233 P. 325.

No defense as to further reduction was interposed, and we may add that, if interposed, we do not think it could have been sustained by evidence as to a mere estimate the receiver hoped or expected to pay depositors at some future date. There is nothing in the bond to the effect that liability thereon should be thus deferred to the date of settlement of the receivership. Indeed, the language of paragraphs 7 and 8, providing for subrogation of the surety as to such future dividends, indicate to the contrary, and nothing in the opinion rendered bears any relation to these provisions of the bond or any rights thereunder.

The application for rehearing is denied.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.